Okay, we'll call the next case on calendar, which is DEMUS v. . COUNTY OF SAN DIEGO. Judge Goodwin, Judge Fischer, Judge Tallman, my name is Lloyd Tooks, and I represent the plaintiff and appellant Charlene Demus in this appeal. Might I have five minutes for rebuttal, please? Sure, and you don't, I mean, we've read the briefs, so we're pretty familiar with the case here. The overall acts in this case challenged were Ms. Demus's demotion, which was one act, and in another act the same day, her first attempted termination, suspension, and then finally reprimand. The overall error we have set forth in our briefs by the district court, with due respect, is one, the district court's failure to not impede upon the jury's domain in this situation. The district court appeared to reach conclusions that are reserved for jurors. Also, secondly, the district court did not consider all of our evidence. There are a couple of places in the summary judgment order where the district court judge says the plaintiff has presented no evidence to support her position or something to that effect. Why don't you zero in on the pretext finding? Because assuming that one debates whether there's a prima facie case and so on and so forth, ultimately the court says that there's insufficient, that they've given a legitimate non-discriminatory reason, and then shifts back to your side saying you haven't really dealt with the pretext. So it would help if you focused your argument on that. Certainly. With respect to pretext, and let me preface that by saying in this case, there was an overriding, I think, issue concerning the legitimate non-discriminatory reason. It is, I think, clear from precedence that even if the legitimate non-discriminatory reason is true or applicable, that doesn't end the discussion there. A plaintiff still has the opportunity to show pretext. Sure. I.e., that that true or applicable legitimate non-discriminatory reason did not actually motivate the employer in this case. The evidence of pretext that we have, well, the legitimate non-discriminatory reason is Ms. Demas was unsatisfactory for or incompetent to perform the duties of the PSW2 position. The facts of pretext that we have are as follows. Number one, the duties for the PSW2 position and the position. Were the same. Were the same. Okay. That's one. Duties the same. Duties are the same. Second, there is evidence that even if an individual. Were there any greater responsibilities, bring her in contact with the wards so that the mistake that she made in the physical exam would be not likely to arise in the PST1 or. I'm sorry. There was nothing, no difference in duties. So even in both cases, she would have been exposed to the child, the children and carrying out those duties. She did exactly the same thing. Okay. So if she was incompetent for PSW2 duties, she was also incompetent to do those duties as a PSW1. Of course, that's what they thought. And they tried to terminate her. But they did not. They brought back the termination not for that, but for another reason. I do not believe that the reason they pulled back the termination was because of exactly what you said, Judge Fisher. It was another reason. The reason, allegedly, and I'll hit this point right now. Okay. Go ahead. Allegedly, the reason the termination was reduced to suspension was when Ms. Venus went to her Scali hearing. No, no, I understand that. But originally, the employer, before she got her Scali hearing and went to the Civil Service Commission, wanted to terminate her. That's correct. So that would be consistent. Just help me out. I'm trying to understand your theory. Their theory is what she did was so disabling in her performance that they were terminating her entirely. Isn't that correct? Well, they gave no explanation. But that they were taking a termination action. They took the termination action. And then after the intervention of her Scali rights and the Civil Service Commission, which wound up with a reprimand, then they demoted her. No. Am I missing the sequence? No. Okay. Two events. One, the demotion. Right. Based on the argument that she was unsatisfactory for or incompetent to perform the duties of her position. Right. Same day, May 31, she receives a letter initially saying you're being terminated. And lists a number of allegations of incompetency. Okay. Separate from the demotion reasons? Well, there are no demotion reasons. Other than the general statement. All right. Okay. Then she receives a separate letter alleging instances of alleged incompetency. After her Scali hearing on the termination, well, no, there's an investigation before the Scali hearing. An investigation was conducted. At that investigation, it was determined clearly that she did not request to rewrite this report that's in issue here. She did not request it. Based upon that, they determined that she was not intentionally culpable here and should not be terminated. There is an issue created by differing versions on the side of the county as to who reduced the termination to a suspension. The county argues at one point that it was Ms. Campbell, the person who initially terminated her. That's an important statement because Ms. Campbell knew when she proposed the termination that Ms. Demas did not request to rewrite. This report. Then after the investigation, Ms. Campbell says she reduced the termination to suspension because Ms. Demas did not request to rewrite the report. So the information upon which Ms. Campbell allegedly bases, her reduction of the discipline, she already had when she proposed the termination. We're dealing basically with those instances. Now to get to your point of pretext, Your Honor, to continue on, I've listed two. The fact that the duties are the same. The fact that the second one was that Ms. Campbell even admitted that one mistake wouldn't necessarily justify terminating a promotion during probationary period. Our submission in that regard, Your Honor, is when you terminate somebody for strictly not going according to a rule and you admit that strictly not going according to a rule or making a mistake does not necessarily justify the demotion. You should give the additional information that justifies the demotion in this particular situation. I hope I didn't say it too obtusely, but there is no additional information given. Notwithstanding the admission that a mistake in and of itself wouldn't justify the demotion. I think I might have misunderstood what you just said, so let me ask you my question. I thought that the county basically concluded that as a PS2, she should have been familiar with the appropriate limitations on the type of an inspection, if that's the right word, or examination that she could conduct of the children, and that it was her unfamiliarity with the county's regulation that was the problem here. Interesting point. I agree that that's what the Civil Service Commission found. Found that she was unfamiliar, by she I mean Ms. Demas, was unfamiliar with this particular regulation. And in that limited respect, she was not competent. So the only incompetence that the Civil Service Commission finding, which are binding on all of us, the only incompetence that the Civil Service Commission attaches to Ms. Demas' conduct is her unfamiliarity with the rule. Not her examination itself. And this might seem like splitting hairs. So she didn't know that she'd gone too far, is that what you're saying? No, no. There's no dispute about that. There's no dispute about that. But I can see how the Civil Service Commission could say, you violated the rule, but you really did a great job in this examination. I mean, you substantively and in essence, the parent was there. The children were not hassled. The children did not feel uncomfortable. You protected the county, indeed, in how you conducted the examination. But you violated this rule. And the violation was that you're not supposed to even go so far to conduct such an intrusive examination, if I can use that word? They've gone back and forth on this. But as far as I understand the county's position, you can't examine a child that age fully unclothed. Unclothed. You take off the top first and examine them. You pull down this and that kind of thing. And since the parent was right there, they were in a private room, the child was fully unclothed when Ms. Demas looked at the child and examined her. So, again, in response to your question, because it's a good point, the only incompetence found by the Civil Service Commission was not being familiar with the rule. The county, however, and this deals primarily with a reprimand issue. The county reprimanded her after the Civil Service Commission specified what the incompetence was, reprimanded her for the examination, being incompetent in the examination. And it might sound like a technical thing, but when you add up everything that went on, it's just the last in a series of events that took place that were disparate. She was treated differently than the rules indicate. Basically, this case focuses on an aberration, treated contrary to the rules and regulations, number one. Secondly, again, and the court did not, I don't think the district court appreciated this, Ms. Demas worked for one of the county's adoption agencies, and this is not on the record, but I don't think it's a dispute, that was located in a predominantly Negro, Hispanic, and other minority area. And that particular adoption facility, Tayari, focused on adoptions concerning primarily Negro, full Negro, or partial Negro children. So it was a special kind of unit. And we have a statement in the record from a person who has nothing to do with this case who says that the individual. Had a bias against that whole unit. Exactly. The whole unit? I'm sorry? A bias against the whole unit? Yes, a bias against. So all of the workers in that unit were African American? The majority were, not all, the majority were. And my argument has been here is that this particular unit was looked at more strictly. And if anybody coughed wrong or sneezed wrong, it was elevated to a major problem. And Ms. Demas, one of my arguments is, Ms. Demas just happened to cough or sneeze wrong. And they elevated the situation. Continuing with the response. Was there any evidence proffered under that theory that there were other units, therefore, under this person's supervision that were treated differently? So you said that they had an elevated level of scrutiny.  She had limited experience, admittedly. But one experience with this particular person, Harrington, in her treatment with this Tyari unit, I think, and another unit, which was a more majority unit. Okay. Continuing the response to your question, Judge Fisher, the third or fourth element, I think, that shows pretext, is that Campbell also admitted flexibility in the application of this rule that my client was, for which my client was demoted. Flexibility. But no explanation as to why the flexibility wasn't applied here. Again, like the situation where a strict one mistake doesn't mean demotion. Similarly, when you have flexibility with respect to the application of a rule, in order to make your legitimate non-discriminatory reason sufficient, you have to explain why you didn't apply the flexibility here. What was done here that made it necessary to absolutely apply the rule to the extent that there was a demotion and initially a proposed termination? And eventually a demotion and a suspension. And the only reason the suspension was knocked out was because the Civil Service Commission finally said, you know, based on the way she conducted the examination, that was in violation. And she was incompetent to the limited extent that she didn't know the rule. Therefore, written reprimand is appropriate. Suspension is an excessive discipline in this situation. A fifth basis for a legitimate non-discriminatory reason. A jury could look at the violation itself and say that what Ms. Demas did would not justify a demotion or termination. For that proposition, I would cite the court to a recent case that the Westlaw site is in my brief. Hernandez versus Space Labs Medical, Inc. The Westlaw site is in my brief. The site I give you is 343 F. Second, 1107. Ninth Circuit case, 2003. In that case, the Supreme Court said, the Ninth Circuit said, that the plaintiff. Is this the one after the Supreme Court reversed it? This is a different Hernandez case. I'm glad you mentioned that. There's another Hernandez case that I mentioned, the Supreme Court decision in it and the remand decision on the sticky pads there, because I don't have that case in mind. The court indicated in Space Labs that Hernandez has also produced evidence that if credited, shows that even if he did commit the errors recounted in the termination letter, they do not amount to infractions that lead to termination. Basically indicating that a jury doesn't have to believe that it's so, because the county says it's so. And that's kind of what the district court judge did. The county said, you can demote a person for incompetence. She was incompetent because the Civil Service Commission said she was incompetent in this limited area. Therefore, everybody's got to believe that we did in fact demote her because of that incompetence. A reasonable person doesn't have to believe that. Based in part on the responses I've given Judge Fisher in the pretext instances. A reasonable person would not have to believe that. Okay. Why don't you save the rest of your time? I didn't want to. We have the other issue here. I'm sorry. We have to talk to him. The other issue is the failure to allow us to amend our complaint. If you don't have any questions on that, I'll sit down. Okay, fine. We'll have the rest of your time for rebuttal. May it please the Court, English Bryant for County of San Diego. In this case, the question is whether the evidence shows that the employer made its employment decisions for legitimate business reasons based on the information that was available at the time. The evidence in this case shows that that is what occurred. Ms. Demas continues to argue that she thinks that she did not violate this critical policy and she shouldn't have faced discipline and she shouldn't have been found incompetent. But the evidence shows that the HHSA appointing authority and the Civil Service Commission and even the black supervisor who supervised Ms. Demas' work all found fault with what Ms. Demas did during the probationary period when she was a PSW-2. The bottom line is here Ms. Demas, the evidence shows that Ms. Demas committed a serious error in judgment. I would disagree with the interpretation of the Civil Service Commission decision that was provided by Mr. Toopes. The Civil Service Commission's decision at the record, page 73, says that by a preponderance of the evidence, the agency proved that the employee violated the policy regarding disrobing children by not being familiar with the policy and by visually examining the children with more clothing removed than was necessary for the examination. And so it would be reasonable to interpret that decision as standing for the proposition that she not only was unfamiliar with the policy, but she also violated one of the restrictions specifically stated in the policy. Well, obviously she's not familiar with it. That's sort of double counting, isn't it? I think it's two different issues. And they scaled it all the way back to reprimand from termination, right? They did, based on evidence. I mean, don't you consider that that's a fairly major retrenchment on the county's reaction to this one incident? I think that the Civil Service Commission looked at all the evidence that was produced in the hearing. Right. And made its decision. And I assume all the evidence was the best the county had to present at that time. At that time, all the evidence was weighed by the commission, and the commission decided that Ms. Demas had been incompetent. On that incident? Not generally, on that incident. Correct. With regards to that incident. And isn't the evidence that she had good evaluations? Prior to this incident and the way that she handled this incident, prior to that point in time, the performance evaluation she received at the midterm of her PSW2 probationary period, which was signed by her supervisor and signed by Ms. Harrington, the white manager who's alleged to be discriminating in this case, showed that they believed that she was, at that point, satisfactorily performing her duties. Right. But after this incident occurred, at that point, based on the information that was available, HHSA did not believe that she was performing fully and satisfactorily as a PSW2, which brings me to the point that PSW2 and PSW1 handles the same, quote, duties, the same cases, but the expectation of the employer is different. Because, as you see in the record, the PSW2 position is a journey-level position. It's an advancement position. When someone's at PSW1, they're deemed to be entry-level position, basic knowledge, learning what they're doing. As a journey level, they have higher, the county has legitimate higher expectations. And, indeed, going back to the black supervisor's evaluation of Ms. Dinas, she was critical of Ms. Dinas with regards to the incident and found that for the second half of the probationary period, she did not meet expectations on quality of judgment. Because of that one incident. Correct. But even the black supervisor agreed to that. So if we're looking at, the question is whether the employer had a legitimate basis to believe that she was not fully qualified to perform the duties of PSW2. And all of the evidence shows that they had a legitimate reason to believe that she was not even knowledgeable with the important critical policy of how to examine a child. She certainly learned it after the incident. I would beg to differ. It seems she didn't even know it at the time that she was subject to the investigation. She didn't know it then, even though her supervisor had asked about it. What do you mean she didn't know it then? She was not familiar with the terms of the policy. The policy is set forth at supplemental excerpt of record. I'm saying after going through this incident, she certainly became aware of it. We hope so. Yes. Now, would she be doing the same kinds of activities as a PSW1? As a PSW1, she would be more closely supervised. And, again, this goes into the supervisor's evaluation of her, and that is that she lacked judgment, and, therefore, the supervisor was going to have to supervise her more closely, and her confidence in Ms. Demas' judgment had been shaken. That's not a one-time incident. When your confidence in someone's judgment is shaken, you're not confident in their ability to perform without supervision. You are not confident in their ability to perform as a journey-level employee. And so it's more than one incident. We're talking about a critical policy. We're talking about a serious error in judgment. We're talking about what the Civil Service Commission, in my opinion, in reviewing its opinion, found that she had violated one of the restrictions in the policy, and the policy is clear. It's in the record at 90 to 91 in the supplemental record, and it says here are guidelines. And then on the next page, it says here are restrictions. Well, I don't think there's any dispute that she violated the policy. I mean, the Civil Service Commission made that finding. So accepting that, the question of what is the county's reaction, that's what we're dealing with. Nobody's quarreling that she goofed up. The question is what is the consequence, and are there indications that the county overreacted against her as compared with somebody else? With regards to the failure of probation, I submit that the standard for a person passing probation is that they demonstrate that they're fully qualified to serve at the level. At this point, she was trying to pass probation as a PSW-2, which is a journey-level, and she had not demonstrated that. Any attorney at a county counsel's office would have approved that failure on probation. With respect to the discipline that also ensued, as the Court noted, it was, as Mr. Tooks noted, a proposed notice of termination was issued because based on the information that was available from the HHSA investigation and from the e-mail that the supervisor had sent indicating that Ms. Demas wanted to rewrite the report, and the fact that she rewrote the report omitting specific information about her improper examination of her privately-motivated children, based on the fact that she changed the report, HHSA investigators determined that she had engaged in concealment, and based upon concealment, that's dishonesty, and of course they proposed her termination. After the Skelly hearing, the facts were further ferreted out, and Ms. Demas did convince the Skelly officer, who gave her every benefit of the doubt, that, look, I didn't request to do this, it was all my supervisor, and basically they gave her the benefit of the doubt, and they decided not to charge her with dishonesty, and instead charge her with the other charges and proceed with a five-day suspension. Mr. Bryant, let me interrupt you with a question. I should know this, but I take it under civil service law that a probationary employee can be demoted for without good cause. That's essentially what probation means? Correct. If they're not fully qualified for any reason, they can be failed on probation. Appointing the standard is that the appointing authority has to determine whether or not they're fully qualified. And if the appointing authority determines that they're incompetent or not satisfactory, then the appointing authority shall dismiss the probationer during the probationary period. Okay. So you're saying that basically because she was a probationary employee, you don't get a second chance that one breach of judgment of this type is sufficient to permit the appointing authority to say, sorry, but you don't cut it as a PSW2? Absolutely. She didn't meet all the qualifications. She was not fully satisfactory for the position. And in addition, there's been no evidence here presented by the plaintiff that there were any other employees who were guilty of conduct like misdemeanors or any conduct that warranted a reprimand, even a reprimand, where the person was allowed to pass probation. I mean, this person failed probation for legitimate reasons. It was a probationary employee. Now, at the same time that the employee was failed on probation, based on the evidence that was available, they also proposed determination for dishonesty. And as I said, as you go through, the due process rights of this civil service employee, she did have a civil service, she did have a Scully hearing, and then she was issued the suspension. Then she was given 10 days to appeal that to the Civil Service Commission. And indeed, she had a full-blown hearing. And then the commission, they issued its decision. And they said, no, it's not going to be a suspension. It's going to be a reprimand. So she wasn't terminated. She wasn't suspended. She was reprimanded. That is the discipline that she ended up with. I argued in the papers that a reprimand is not an adverse action. I wouldn't spend a lot of time on that. I bet if you got one, you'd think it was an adverse action. I understand the court's position. I wanted to just make a couple of comments about the Vasquez decision, because the Vasquez decision that was cited by the court and earlier cited by us was the 2002 decision, Vasquez v. County of Los Angeles. And in the interim, that decision was withdrawn and replaced with a new Vasquez decision issued by this Ninth Circuit on November 7th of 2003. And because this court has asked the parties to focus on pretext, I didn't want to go ahead and focus on Vasquez for the pretext issue, and then I'll also focus on it with regards to the adverse employment action issue. With regards to pretext, Vasquez says that a plaintiff can show pretext directly by showing that discrimination more likely motivated the employer or indirectly by showing that the employer's explanation is unworthy of credence. It's the county's position that plaintiff has not shown either. However, the evidence demonstrates legitimate business reasons that are true reasons for why they took the actions that they did. Now, in addition, the evidence shows that the employer was acting in good faith and acting on the information that was available at each stage of the proceedings. There's no evidence that the employer's explanation is unworthy of credence, and there's no direct evidence of discrimination. I'm going to go through quickly, if I may, the points that Mr. Tooke's raised with regards to the pretext issue. Again, focusing on the fact that this court should be looking at the information that was available at the time the employer's decision was made. At the end of the day, the employer would not have decided it had just cause to terminate her employment from the county completely. But you don't need it, do you? On the discipline issue, on the failure of probation, the county's position was and the county's position remains that the failure of probation was appropriate. At the time they made the decision... But you don't need just cause to decide that she hasn't passed probation. Correct. You need just cause to terminate her, I assume, as a county employee because she had been employed as a PSW-1 prior to this. Correct. Okay. And she passed that probation, right? Yes, she had passed. All right. The county did not proceed with termination of her county employment. Proceeded with the suspension, and then the Civil Service Commission said it. It was a reprimand. It was a reprimand. Okay. She still is complaining about the demotion for having been undertaken for prohibited reasons. Correct. And we've addressed that. Now, with regards to the issues that the plaintiff pointed to, I addressed the issue about the duties are the same. Again, these are two different job classifications. One is the promotion. It's an advanced, journey-level position. It should require less supervision. In Ms. Demas' case, she was requiring more supervision because of her lack of quality of judgment. With regards to the different persons who reduced the suspension, Ms. Demas argues that on one hand, we argued that the Skelly officer reduced the notice of proposed termination to a suspension. On the other hand, we argued that Ms. Campbell did. I think what he's doing is just meshing the words. The fact is the way it works in the Civil Service system is you have the appointing authority who proposes the discipline, and then the employee has the right to a Skelly conference. The Skelly officer then makes the recommendation. It is always, though, the appointing authority who ultimately makes the decision. So the fact that the Skelly officer says, Yeah, I said reduce it, and the appointing authority says, Yeah, I decided to reduce it. That doesn't create a tribal issue. Well, it could be some evidence that the initiator in the first instance had personal animosity and had to be scaled back through the administrative process through Skelly and through the Civil Service Commission. It's not irrelevant. In other words, because the Civil Service Commission intervened at the end because they had the last word doesn't mean, I don't think you're arguing, that that vitiates any illegal conduct that happened in getting to that point. Correct? Correct. What I'm saying is there isn't evidence of illegal conduct in getting to that point because if you look at each judgment. That's what I thought you were arguing. Okay. Another point that was made is that she claims that she made one single innocuous error. As I explained earlier, this was a critical policy. Okay, I think we've got that point. Okay. With regards to Ms. Blazowski, the Filipino co-worker at the Tayari unit, her memo that was provided, the title of the memo is discrimination and bias. Just because someone says discrimination or bias doesn't mean there's evidence of discrimination against a certain race. In this case, the court could not infer race discrimination against African Americans because in the illustrations that were provided in this hearsay memo that's unsupported by personal knowledge, in any event, the illustrations there show that Ms. Harrington, the subject of the complaint, actually was biased in favor of black employees. And so you cannot infer an inference of race discrimination against African American employees based upon that memorandum. There's no evidence that they were desperately treated either as a group. There's no evidence of specific standards that were applied to one adoptions unit versus this adoptions unit. And so that memo doesn't provide any support. What about Margaret Katungy, her supervisors, talking about Harrington's comment negative to Demas, asking her if facts are construed favorably to the non-movement. The non-movement on summary judgment said, what do you got on Charlene and didn't let her write a favorable recommendation. What do we do with that? Ms. Katungy, the evidence shows that Ms. Katungy was not going to write a purely favorable evaluation. Ms. Katungy's draft actually is in evidence and it has on it Ms. Harrington's proposed revisions or suggestions on rewrites. And in Ms. Katungy's own draft evaluation, she did include negative information about Ms. Demas, the way that she handled this examination, and the way that she reported the examination, and the way that she caused confusion and caused this black supervisor's confidence to be shaken. And in addition, if you look at the deposition testimony, when Ms. Harrington asked Ms. Katungy, the black supervisor, what have you got on Charlene? And Ms. Katungy said, what do you mean? She said, do you have anything negative on Charlene? Ms. Katungy responded, yes, she does have something negative on Charlene. And she did indeed write something negative about Charlene, something that was serious and something that was appropriate for finding that she did not meet the expectations for the position. In summary, what the plaintiff has done is not provided specific substantial evidence to create an inference of race discrimination in this case. What the plaintiff has done is thrown out conclusions that are not supported by the evidence in the record below. And so for that reason, summary judgment was properly granted because the county clearly had legitimate reasons to take the actions it did. Those reasons are not unworthy of credence, and there's no evidence of race discrimination. Thank you. Quickly in rebuttal, I would ask the Court overall first, I know you will focus on the record. Some of what Ms. Bryant said was Ms. Bryant speaking and not the record. If you just focus on the record and not just argument of counsel, I think it's clear the error here. One, with respect to what the Civil Service Commission said, at page 73 of the record, I've admitted, they found evidence of a violation in the examination. Then at page 74 of the excerpts of record, in their findings, that's where they limit the finding of not being competent to not knowing the rule. It's clear that it was limited to not knowing the rule. In response, I think Judge Tallman's question about, did they have to have cause? Yes, they did. I would cite you to the record, page 77. Now it is not, and this is what we've been going on, this is the rule upon which they terminated her. It cited, I mean, attempted to terminate her and demoted her. It says, and I quote quickly, the appointing authority shall dismiss a probationary who is found unsatisfactory for or incompetent to fulfill the duties of the position to which he slash she is appointed, except as provided in Rule 14.3.2, which is not applicable. So you must have that cause. That's why they used that to terminate her. That's number one. Secondly, of course, and that makes it, this is not an at-will situation, even in a probationary situation. She had reversion rights to her prior position. Yes, she did. And that was kind of overlooked when they tried to terminate her. Then they had to recognize that. Secondly, of course, even if she were an at-will employee during probation, which she's not, she can't be terminated because she's black. So still, they have to have a legitimate non-discriminatory reason, and that brings us right back to, was there a legitimate non-discriminatory reason? Second, Ketunji said, Ketunji is her immediate supervisor, ostensibly knows more about her than anyone else, she should have passed probation. Bottom line, not should, she definitely should have passed probation. Ketunji's word. Is that Ketunji's decision? I thought the appointing authority has to ultimately make that call. Absolutely does. But Ketunji's testimony is evidence that your call made was an improper call. You can't discount her. She's the supervisor. She's there. So you can't just, as I think the district court judges, throw away her opinion based on her experience with Ms. Venus. Finally, and I know the red light is on, differences concerning PSW2, PSW1. Much of what Ms. Bryant said, not in the record. The differences, not in the record at all. Not in the record at all. Thank you very much. Thank you, counsel. We appreciate the argument. And the case argued is now submitted.
judges: Goodwin, Fisher, Tallman